UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL A. MAYO, | : | CIVIL ACTION NO. 3:CV-06-2241 |
| Petitioner | : | (Judge Nealon) |
| v. | : | FILED SCRANTON |
| KAREN HOGSTEN, Warden, | : | MAY 2 3 2007 |
| Respondent | : | PER ___ _____ DEPUTY CLERK |

**MEMORANDUM AND ORDER**

Darryl A. Mayo, ("Mayo"), an inmate formerly confined in the Allenwood Federal Correctional Institution, ("FCI-Allenwood") White Deer, Pennsylvania[1], filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Named as Respondent is Karen Hogsten, Warden at FCI-Allenwood. Petitioner claims that while previously incarcerated at the FCI-Allenwood, his due process rights were violated during the course of a prison disciplinary hearing, where he was found guilty of the prohibited act of Assaulting Any Person, a violation of Disciplinary Code Section 224 and Refusing to Obey an Order of Any Staff Member, a violation of Disciplinary Code Section 307. Specifically, he claims that the Unit

---

[1]Petitioner is currently housed in the United States Penitentiary at Allenwood, White Deer, Pennsylvania.

Discipline Committee ("UDC") hearing did not take place within three days of the date staff became aware of the incident or within three days of the date the incident report was "re-instituted" as required by Bureau of Prisons' ("BOP") policy. (Doc. 1, petition). For relief, Petitioner seeks the expungement of the misconduct report from his prison record and the restoration of the 27 days of good conduct time forfeieted by the Discipline Hearing Officer ("DHO"). The petition is ripe for disposition and, for the reasons that follow, will be denied.

## Background

On April 12, 2006, at approximately 6:45 p.m., Petitioner was served with Incident Report No. 1455209 for "Assaulting Any Person " in violation of Disciplinary Code Section 224, and for "Refusing to Obey an Order of Any Staff Member," in violation of Disciplinary Code Section 307 . (Doc. 7, Att. D, Incident Report). The incident report, which was written by Officer R. White, reads as follows:

> Description of Incident (Date: 4/12/06 Time: 4:24 p.m. Staff became aware of incident)
> On the above date and time Inmate Mayo #12147-007 was fighting with Inmate Benjamin #05745-016 in cell 117 in Unit 3A. When I arrived at the door, the cell door was secured due to it being count time. I saw Inmate Mayo pushing Inmate Benjamin from the sink area to the bottom

> bunk. Inmate Mayo was on top of Inmate Benjamin punching him in the face and upper torso area with closed fist. Inmate Mayo refused repeated orders to stop. Inmate Mayo was the aggressor while Inmate Benjamin was not fighting back.

Id. On June 2, 2006, Warden Hogsten approved a request filed by the UDC for enlargement of time within which to conduct its hearing, based on the following:

> The United Discipline Committee (UDC) is requesting an extension to conduct a hearing for Incident Report #1455209, regarding inmate Darryl Mayo, Reg. No. 12147-007. The incident report was referred to the FBI for prosecution. The FBI declined to prosecute and released the report on May 30, 2006, for Bureau of Prisons sanctions.
>
> Due to the time frames involved, the UDC is requesting approval for an extension to conduct this hearing.

(Doc. 7, Att. F, Memorandum).

On June 9, 2006, Petitioner appeared before the UDC. (Doc. 7, Att. D, Incident Report). The UDC referred the charge to the DHO for "sanctions that can not be imposed at the UDC if found guilty." Id.

On June 22, 2006, Petitioner appeared for a hearing before DHO, K. Bittenbender. (Doc. 7, Att. G, DHO Report). The DHO Report reflects the following:

> At the onset of this hearing, Mayo was advised of his Rights

3

> before the DHO, indicated he understood them (waived witness testimony) and chose to provide the following statement:
>
> MAYO stated, "It's true form what the officer had seen." Mayo stated, "I didn't know or hear the officer at the cell door." MAYO stated, "He (BENJAMIN) had spit in my face and I hit him."
>
> No procedural issues were cited, nor was any documentary evidence provided for consideration. The DHO noted a delay in the discipline process. This was due to the case being referred to the FBI pending possible prosecution. The DHO did not believe this delay infringed upon MAYO's ability to defend himself against the charge. With this, the hearing was continued. Inculpatory and Exculpatory evidence was verbally provided by the DHO to the extent believed practical under FOIAE/PA policy. Staff Representative, D. Thomas disclosed all documents in reference to this case. The inmate was advised to make any formal request for documents to the Central Office.

Id. The documentary evidence which the DHO considered in making his determination included the Incident Report and Investigation, a Memorandum dated April 13, 2006, from Lt. Shepard, a Memorandum dated April 12, 2006, from Officer Carper, a Memorandum dated April 12, 2006, from Mr. DiFrancesco, a Memorandum dated April 12, 2006, from Officer Flewelling; and a Memorandum dated April 12, 2006, from Officer White. Id. Confidential information was used by the DHO in support of his findings, but was not revealed to the inmate. Id. The confidential

4

information was documented in a separate report. The specific evidence taken from the relied upon documentary evidence was as follows:

> During this discipline hearing regarding MAYO, Darryl, register No. 12147-007, for the charge of Assaulting Any Person, Code 224 and Refusing to Obey an Order of Any Staff Member, Code 307, the following information was evidentiary and documented by the DHO in his findings.
>
> MAYO's involvement in the incident as noted in Section 11 of the Incident Report 1455209, as provided by R. White, Senior Officer, was viewed as inculpatory in this case. Paraphrased, R. White Writes: On April 12, 2006, at or about 4:24 p.m., inmate MAYO #12147-007, was fighting with inmate Benjamin #05745-016, in cell #117, in Unit 3A. When I arrived at the door, the cell door was secured due to it being count time, I saw inmate MAYO pushing inmate Benjamin from the sink area to the bottom bunk. Inmate MAYO was on top of inmate Benjamin punching him in the face and upper torso area with a fist. Inmate MAYO refused repeated orders to stop. Inmate MAYO was the aggressor while inmate Benjamin was not fighting back.
>
> Inculpatory evidence in the form of a memorandum from Officer Flewelling dated 4/12/06, corroborated the evidence cited in the incident report in this case. Officer Flewelling indicated I observed MAYO on top of Benjamin beating him with closed fists about the head and torso area. BENJAMIN was pinned down by MAYO and restrained to the point at which BENJAMIN was not able to protect himself from the blows of MAYO. MAYO continually and repeatedly refused staff's orders to separate and submit to hand restraints.
>
> The DHO believed the information provided by the staff

5

> members involved in this case, as they derived no known benefit by providing false information and by virtue of their position, are obligated to tell be truthful.
>
> Upon questioning by the DHO, MAYO admitted the charges. He elaborated upon his plea by stating, "the report is true."
>
> After the consideration of evidence listed in Section V of this hearing report and documented above, the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in paragraphs two and three above as well as the inmate's admittance, support(s) the finding MAYO, Darryl, Register No. 12147-007, committed the prohibited act of Assaulting Any Person, Code 224, on April 12, 2006, at or about 4:24 p.m., in Unit 3A, Cell #117, FCI Allenwood, PA.
>
> The DHO finds the charge for code 307 to be duplicitous with code 224 and thus expunged from the report.

Id. The DHO sanctioned Mayo to 30 days in disciplinary segregation; 27 days disallowance of good conduct time; and loss of telephone and visitation privileges for six months. Id. The DHO documented his reasons for the sanctions given as follows:

> MAYO's assault of another inmate threatens not only the safety of the victim, but staff and other inmates. In a correctional setting, an apparent isolated incident often escalates to involve others. Behavior of this type denotes an unwillingness to problem solve in an appropriate manner; one other than violence. Accordingly, Disciplinary Segregation and the Disallowance of Good Conduct Time is sanctioned to punish MAYO for his behavior, while the Loss of Privileges (Phone and Visit) is sanctioned in an effort to deter him from it in the future.

6

Id.

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. <u>Torres v. Fauver</u>, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. <u>Id.</u> Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In <u>Wolff</u>, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex

issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); *see also* Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See* Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's

involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing.[2] 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

Construing this pro se Petitioner's claims liberally, Mayo claims that his delay in the receipt of his initial hearing violated the BOP's regulations and his due process rights. The Court finds no merit to Mayo's argument.

Mayo received his incident report on Wednesday, April 12, 2006. The "ordinary" three-day period to conduct his UDC hearing expired on Monday, April 17, 2006. At that time the matter had been referred to the FBI for possible prosecution. Pursuant to BOP regulations,

---

[2] Mayo was charged with an offense in the high severity category, fighting with another person. 28 C.F.R. § 541.13, Table 3.

> When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur.

See 28 C.F.R. § 541.14(b)(1). Thus, the UDC properly suspended their investigation into the incident, pending the outcome of the FBI investigation. On May 30, 2006, the FBI released their findings and their decision not to prosecute. On June 2, 2006, upon receipt of the FBI's findings, the UDC, requested an enlargement of time within which to conduct Petitioner's hearing. Mayo received his UDC hearing seven days later on Friday, June 9, 2006. While the language of the BOP's disciplinary proceedings note that UDC hearings are "ordinarily" held within three days of staff's learning of their involvement in an incident, the regulation also allows for extensions of this time frame for good cause. In this instance the UDC followed procedures and sought an extension from the Warden due to the FBI investigation. Therefore, the UDC did not violate BOP procedure.

Moreover, the Court finds that Petitioner's singular challenge to the delay in his initial hearing does not automatically equate to a violation of his Due Process rights. Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D. Pa. 1992)("The Constitution

does not require strict adherence to administrative regulations and guidelines.") The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. Id. Wolff does not set a three- or seven-day limit, or any time limit, for the hearing. No Due Process violation occurred by holding Petitioner's initial hearing outside of the "ordinary" three-day period.

Furthermore, the true measure of whether a due process violation occurred as a result of a delay in Mayo's disciplinary process is whether he suffered harm or some form of prejudice as a result. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa. 1994). This is not a case that Petitioner was denied a hearing before the UDC or DHO. He does not dispute the DHO's findings. He simply argues that "procedural issues" were not followed. No where in his Petition does Mayo argue that he was harmed, prejudiced or otherwise disadvantaged by the delay in his UDC hearing. Von Kahl, 855 F.Supp. at 1421-1422 ("[T]his court is reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate."). Thus, this Court finds no violation of his Due Process rights associated with Petitioner's claim, and

therefore, will deny habeas relief.

Mayo was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Although Petitioner requested D. Thomas, of the Psychology Department, as a staff representative, Ms. Thomas "declined or could not appear[3]." (Doc. 7, Att. G, DHO Report). Petitioner was then "advised of the option to postpone hearing to obtain another representative." Id. Petitioner chose to proceed without staff representation and to make a statement, which was documented in the DHO's report. Id. Petitioner also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Id. Petitioner was then

---

[3]Although Ms. Thomas did not appear at the hearing, she submitted the following statement:
   Staff Representative, D. Thomas noted no discrepancies in the discipline process. Further, she met with MAYO in advance of the hearing to discuss the case. Additionally, Ms. Thomas indicated he has done some programming and had bought this problem he was having with his cell mate to my attention before and we discussed how he should go about handling it. Violence was not an option which was presented to him."
(Doc. 7, Att. G, DHO Report)

12

notified of his right to appeal. Id.

Since Petitioner was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. In addition to the statement provided by Petitioner, the DHO also considered the investigative report and staff memoranda, to conclude that the greater weight of the evidence supported a finding of guilt. Thus, based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are some of the sanctions available for 200 level offenses:

> B.1. Disallow ordinarily between 14 and 27 days of good conduct time;
> D. Disciplinary segregation (up to 30 days); and,
> G. Loss of privileges.

28 C.F.R. § 541.13 (Tables 3 and 4). Thus, the sanctions imposed by the DHO in the present case (i.e.,30 days disciplinary segregation, 6 month loss of privileges, and loss of 27 days of good conduct time) were consistent with the severity level of the

13

prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. An appropriate Order follows.


Date:  May 22, 2007                                  s/ William J. Nealon
                                                                                            **United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL A. MAYO, | : | CIVIL ACTION NO. 3:CV-06-2241 |
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| KAREN HOLSTEN, Warden, | : | |
| Respondent | : | |

## ORDER

AND **NOW**, this 22nd day of **MAY, 2007**, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk of Courts is directed to **CLOSE** this case.

s/ William J. Nealon
**United States District Judge**